JAMES M. CAMMACK, Respondent, v. J. B. SLATTERY & BRO., INC., Appellant.

Contract — royalties — services — action to recover royalties and selling commissions — notices of termination of contract ineffective where defendant continued to operate under a part thereof — contract under seal may not be modified by supplemental agreement not under seal — optional position as sales manager — abandonment of work for fifteen months, without legal excuse, a discontinuance and retirement from position — incapacity brought on by bad habits no excuse — plaintiff not entitled to sales commissions during absence.

1. In an action to recover royalties and selling commissions under a contract whereby defendant agreed to manufacture a certain type of radiator and pay to plaintiff royalties thereon and in addition pay him a commission on the price of radiators sold, for his services as sales manager, an argument by defendant that the contract was not entered into for any definite time and that, therefore, it was terminable at will and that notices of intention to terminate were served upon the plaintiff, becomes academic where, as a matter of fact, it did not terminate the contract but continued to manufacture and sell radiators. Under such circumstances it is questionable whether the notice even effected a termination of the contract for plaintiff's services as sales manager, for it is doubtful whether a notice directed at the entire agreement would serve to effect a termination of one part when the defendant elected to continue to operate under the other part.

2. The original contract recited that it was under seal and while only the seal of the defendant was, as matter of fact, attached, plaintiff will be regarded as having adopted the seal affixed, thereby making

the contract one under seal. A contention, therefore, that by a supplemental contract, not under seal, the commissions to be paid to plaintiff under the original contract were to be reduced, cannot be upheld. It was necessary that a contract designed to modify the first one so far as unexecuted should itself be under seal.

3. Where, however, the original contract between the parties provided that plaintiff's position and duties as a sales manager were to continue " during his pleasure " and it also provided that in the event he should " discontinue or retire from the sale of the aforesaid radiators then the said selling commission from any future sales shall be waived by him and thereupon cease and his sole compensation shall be royalties aforesaid," and the findings and requests to find based upon uncontradicted evidence show that without any adequate legal excuse plaintiff abandoned his work for fifteen months, this must be regarded as a discontinuance of and retirement from his optional position as a sales manager. A finding, therefore, that plaintiff is entitled to selling commissions on all radiators manufactured and sold during a time, included in his absence, is erroneous.

*Cammack* v. *Slattery & Bro., Inc.,* 209 App. Div. 877, modified.

(Argued June 10, 1925; decided July 15, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 2, 1924, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

*James F. Donnelly* and *Frederick J. Flynn* for appellant. The written agreement of July 19, 1915, was duly modified by valid oral agreement found to have been made March 1, 1917, and the court erred in awarding judgment on the basis of the written agreement rather than on the basis of the modified agreement. (*McCreery* v. *Day,* 119 N. Y. 1; *Mitchell* v. *Dunmore Realty Co.,* 156 App. Div. 117; *Harris* v. *Shorall,* 230 N. Y. 343; *Thompson* v. *Poor,* 147 N. Y. 402; *Diamond* v. *Talbot,* 123 Misc. Rep. 339; *Lagumis* v. *Gerard,* 116 Misc. Rep. 471; *Van Ingen* v. *Belmont,* 121 Misc. Rep. 109; *Ressler* v. *Samphemor Holding Corporation,* 201 App. Div. 344; *Briggs* v. *Partridge,* 64 N. Y. 357; *Lowe* v. *Morris,* 13 Ga. 147.) The contract

having specified no definite period of duration was terminable at will and the court erred in refusing to find that the written notice of termination sent by defendant did in fact terminate the contract. (*Smyth* v. *Brooklyn Union El. R. R. Co.,* 193 N. Y. 335; *Fleischman* v. *Furgeson,* 223 N. Y. 235; *Mawhinney* v. *Millbrook Mills,* 231 N. Y. 290; *Baylies* v. *Automatic Co.,* 70 App. Div. 557; *Outerbridge* v. *Campbell,* 87 App. Div. 597; *Winslow* v. *Mayo,* 123 App. Div. 758; *U. S.* v. *U. S. Fidelity Co.,* 139 App. Div. 262; *Weinstein* v. *Welden,* 160 App. Div. 554; *Bradlee* v. *Southern Coast Co.,* 193 Mass. 378; *Wilcox* v. *Ewing,* 141 U. S. 627.) The conclusions of law as to performance and waiver are not supported by the findings of fact. (*Kelly* v. *Buffalo Sav. Bank,* 180 N. Y. 181; *Everett* v. *Everett,* 180 N. Y. 452; *Todd* v. *Union Casualty & Surety Co.,* 70 App. Div. 52; *Pope Mfg. Co.* v. *Rubber Goods Mfg. Co.,* 110 App. Div. 341; *Weeks* v. *O'Brien,* 141 N. Y. 199; *Bossert* v. *Poerschke,* 51 App. Div. 381; *Brooklyn Heights Co.* v. *Brooklyn City Co.,* 151 App. Div. 465; *Clarke* v. *West,* 193 N. Y. 349; *Ward* v. *Brady,* 63 Misc. Rep. 435; *Villhauer* v. *Gross,* 138 App. Div. 10.) It was error for the court to award judgment as for commissions earned. (*Butler* v. *Butler,* 77 N. Y. 472; *Scott* v. *Eng. News Pub. Co.,* 47 App. Div. 558; *McCargo* v. *Jergens,* 206 N. Y. 363; *Worley* v. *Calculograph Co.,* 87 Misc. Rep. 309.)

*Walter R. Kuhn* for respondent. The judgment was properly awarded on the basis of the written agreement of the parties, dated July 19, 1915, and not on the basis of the unexecuted oral modification thereof. (*Rusling* v. *Union P. & C. Co.,* 5 App. Div. 448; 158 N. Y. 737; *Fuller Process Co.* v. *Texas Co.,* 185 N. Y. Supp. 3; *Matter of Pierce,* 198 N. Y. 209; *Weber* v. *Columbia Amusement Co.,* 160 App. Div. 835; *Weeks* v. *Esler,* 143 N. Y. 374; *Smith* v. *Henning,* 10 W. Va. 596; *Interrante* v. *Levinson,* 129 App. Div. 495; *McKenzie* v. *Harrison,* 120 N. Y. 260; *Imperator Realty Co.* v. *Tull,* 228 N. Y. 447;

*Lion Brewery* v. *Fricke,* 204 App. Div. 470; *Steinberg* v. *Simon,* 169 App. Div. 67.) The contract is definite as to its duration. (*Brooklyn Insurance Co.* v. *Dueber,* 95 U. S. 269; *Nicoll* v. *Sands,* 131 N. Y. 19; *City* v. *Railroad,* 193 N. Y. 19; *Carthage* v. *Carthage,* 200 N. Y. 1; *Brown* v. *Cleveland Trust Co.,* 195 App. Div. 465; *French* v. *Carhart,* 1 N. Y. 96; *Syms* v. *Mayor,* 105 N. Y. 153; *New York Trust Co.* v. *Portland R. Co.,* 197 App. Div. 422; *Ga Nun* v. *Palmer,* 202 N. Y. 483; 216 N. Y. 603; *Schwartz* v. *Regensburg,* 227 N. Y. 568; *Bathrick* v. *Coffin,* 13 App. Div. 101; *Seed* v. *Johnston,* 63 App. Div. 340.) The essential findings of fact support the conclusions of law. (*Dougherty* v. *Lion F. Ins. Co.,* 183 N. Y. 302; *Hutton* v. *Smith,* 175 N. Y. 375; *Kennedy* v. *Mineola Tractor Co.,* 178 N. Y. 508; *First Nat. Bank* v. *Chalmers,* 144 N. Y. 436; *Groves* v. *Rice,* 148 N. Y. 227; *Clark* v. *Howard,* 150 N. Y. 239; *Thomson* v. *Bank of British North America,* 82 N. Y. 1; *Burnap* v. *Nat. Bank of Potsdam,* 96 N. Y. 125; *Equitable Co-op. F. Co.* v. *Hersee,* 103 N. Y. 23; *Stokes* v. *Mackay,* 147 N. Y. 223; *Czerney* v. *Haas,* 144 App. Div. 430.)

HISCOCK, Ch. J. From the somewhat multitudinous findings in greater part proposed by the parties and from requests to find supported by uncontradicted evidence the following facts appear, which are decisive of this appeal:

In July, 1915, the parties made a contract which in part provided for the manufacture by defendant of a certain type of radiators which embodied ideas and conformed to plans developed by the plaintiff and in return for the right to do which it was to pay plaintiff certain royalties on radiators thus manufactured and sold by it.

By other portions of the agreement plaintiff undertook " during his pleasure " to discharge the duties of a sales manager, although not so called in the agreement, in marketing the radiators thus to be manufactured by

defendant. To quite an extent performance of the services specified was optional and if rendered at all might be performed by salesmen selected by him. But in addition to these duties optional either as to performance or as to method of performance, there were certain duties which, subject to the right to quit at any time and subject to exceptions hereinafter to be referred to, plaintiff absolutely undertook to discharge. Amongst these were the ones that he would devote not less than six months in each year to the sale of radiators and that he would report to defendant conditions of business at least three times each week when not on the road or on a vacation. Defendant had the right in case plaintiff became unable and incapacitated by illness or by any other reason beyond his control from discharging his duties or if he neglected to discharge them, to hire salesmen whose salaries and expenses should be charged to the " commission account of plaintiff." It was also further provided that in the event plaintiff should " discontinue or retire from the sale " of radiators commissions on future sales should be " waived by him and thereupon cease and his sole compensation be the royalties " already mentioned. For his services in this capacity of sales manager plaintiff was to receive a certain commission on the price of radiators sold. The agreement did not explicitly specify any time for its duration and while it recited that it was under seal, as a matter of fact only the corporate seal of the defendant was attached thereto.

On or about March 1st, 1917, by an agreement not under seal the parties purported to modify their original contract, the main modifications being a reduction in the amount of royalties and commissions to be paid to plaintiff. The parties continued to operate under the modified contract until some time in 1921, when the defendant attempted to terminate its contract by serving upon plaintiff written notice of its intention so to do, first in May, 1921, and again on November 7, 1921. Notwithstanding these notices,

however, it continued to manufacture radiators as provided in the agreement. But in January, 1920, plaintiff discontinued his services as sales manager and in the latter part of February of that year went away to some health resort in an endeavor to overcome the habit of the excessive use of alcoholic liquors and to cure himself of the effects thereof and from that time he remained continuously away and failed to attend to any of the business of the defendant as provided in the agreement. While the trial judge in accordance with the theory of the complaint has found notwithstanding these facts that plaintiff " performed all of the covenants and conditions of said agreement on his part to be performed except those where the defendant waived performance " it sufficiently appears from special findings that although it was after the execution of the original contract that plaintiff became so addicted to the excessive use of intoxicants as to become incapacitated and fail to discharge his duties under the contract, the trial justice has excused this failure and found full performance on the theory that his desire for intoxicants became uncontrollable and, therefore, amounted to a form of sickness which, under the terms of the contract, excused him from performance.

Under these circumstances the trial justice has found that plaintiff was entitled to royalties and selling commissions on all radiators manufactured and sold during the year June 1st, 1921, to June 1st, 1922, less certain sums paid by defendant to other salesmen to discharge plaintiff's duties and has rendered judgment for the substantial sum of $17,529.01 of which $8,601.77 is for selling commissions during the period above specified when plaintiff failed to render any services.

On these facts we come to certain questions of law. The defendant argues that the contract which it made for the manufacture and sale of radiators was not entered into for any definite time and that, therefore, it was

terminable at will and that notices of a desire and intention to terminate were duly served upon the plaintiff. If we assume, as I think is the fact, that defendant might have terminated its contract at any time and did serve purported notices of intention so to do, the answer is that it did not as a matter of fact terminate the contract but continued to manufacture and sell radiators during the year 1921–1922. Under these circumstances this argument of defendant becomes quite academic because, of course, it would be unreasonable and inequitable to hold that the defendant might in form terminate its contract and then continue to manufacture radiators without the payment of any royalties such as it had agreed to pay.

It is also argued that by the purported contract of 1917 the commissions to be paid to plaintiff under the original contract were reduced and this argument quite largely resolves itself into a discussion of the question whether the original contract was under seal and whether, therefore, it was necessary for the purported modifying contract to be under seal as it concededly was not. We think that the courts below have been correct in their disposition of this question. The original contract recited that it was under seal and while only the seal of the defendant as a matter of fact was attached, it is well settled that under such circumstances the party whose seal is not attached is to be regarded as having adopted the seal which has been affixed and, therefore, as making the contract one under seal. (*Rusling* v. *Union Pipe & Constr. Co.*, 5 App. Div. 448; affd., 158 N. Y. 737.)

This being so it is the rule in such a case as this that it was necessary that a contract designed to modify the first one so far as unexecuted should itself be under seal. (*McKenzie* v. *Harrison,* 120 N. Y. 260.) While much has been said about the anachronistic absurdity of giving to seals at the present day the solemnity and force which they once justly possessed and while courts have undoubtedly been quite ready to escape

from an alleged invalidity of a contract predicated upon failure to use a seal, nevertheless this court has been unwilling to make a decision generally annulling and destroying well-settled rules pertaining to the use of seals. Such a decision without reservations, which we would be unable to make, would result in affecting contracts in a manner which would be chaotic and unjust. If the use of seals as now required is to be generally discontinued this result should be accomplished by the Legislature, which could make proper reservations preserving the integrity and force of contracts already executed and the task should not be attempted by us. (*Crowley* v. *Lewis*, 239 N. Y. 264.)

Therefore, we conclude that so far as royalties are concerned plaintiff was entitled on the findings to the judgment which has been rendered in his favor.

We next come to the question whether plaintiff was entitled to recover for selling commissions during the year 1921–1922 as he has thus far been allowed to do. Plaintiff's neglect of business to which we shall hereafter refer undoubtedly justified the defendant in terminating its contract with him. In fact it needed no excuse for terminating its contract because, under the agreement the time during which it would continue to manufacture and sell plaintiff's radiators was entirely indefinite and could be terminated at any time. Defendant, however, in a somewhat blundering way attempted to terminate its contract with plaintiff by serving two notices, one in May, 1921, and one in November, 1921. The trial justice on some theory has found that these notices were for the purpose of terminating the modifying agreement of March, 1917, but in another place it has been found that they were served for the purpose of terminating the entire agreement. An inspection of the notices for the purpose of elucidating these findings shows that they were not confined to the modifying agreement of 1917 and defendant is entitled to the more favorable findings.

But if it had been necessary to serve notice upon the plaintiff in order to terminate the contract it is doubtful whether these notices would have had that effect. There was one agreement containing provisions for the manufacture of radiators and for the sale of radiators. Plaintiff was derelict in his duty in respect of the obligations covered by the second part of the agreement and defendant continued to manufacture the radiators as provided by the former part. Under such circumstances we doubt whether a notice directed at the entire agreement would serve to effect a termination of one part when the defendant elected to continue to operate under the other part. It is, however, unnecessary to consider this question at length for we think there is an entirely different theory which relieves defendant from the payment to plaintiff of any sales commissions during the time in question.

The original contract between the parties provided that plaintiff's position and duties as a sales manager were to continue " during his pleasure " and it also provided that in the event he should " discontinue or retire from the sale of the aforesaid radiators then the said selling commission from any future sales shall be waived by him and thereupon cease and his sole compensation shall be royalties aforesaid." The findings and the uncontradicted evidence presented by requests to find show that from January, 1920, plaintiff failed to perform a particle of work in making sales of radiators as provided by the contract; he did not devote six months of each year to these duties; he did not confer three times a week with defendant about business conditions; he did not hire or oversee the work of salesmen employed to do this work; he did not visit important customers of the defendant. On the other hand, in February, 1920, he abandoned his place of business and thenceforth constantly remained away therefrom, the method of his going and staying away being so successful that defendant did not even know where he was.

We, of course, do not overlook the findings which have been made that after the contract was made between these parties plaintiff became so addicted to the use of intoxicants and his desire therefor and use thereof became so uncontrollable that he became sick and incapacitated from discharging his duties as sales manager. Even if we assume that the absence of a party required to perform personal services for a period of 15 months as the result of involuntary and unavoidable sickness would not result in a breach of his contract, that is not this case. As we have pointed out, the plaintiff contracted these habits after he made his contract with defendant. While it has been found and while that may be a popular or even justifiable view, that the craving for intoxicants may become more or less uncontrollable, it has never yet been held so far as we are aware that a party to a contract was excused from his performance because he voluntarily drank to excess and incapacitated himself for the performance of his duties however strong his disposition to do this may have been. It would be a new and rather undesirable excuse for breaking contracts, if one might go out and incur the habit of drinking and carry it to such excess that it incapacitated him for work and then have the habit regarded as an uncontrollable sickness which formed an excuse for his default.

Thus it appears that the plaintiff, having the right at any time to discontinue his duties as a sales manager, in January, 1920, did discontinue them and thenceforward utterly failed to discharge any of them. We think that this clearly brought him within the provision already quoted providing that if he "discontinued or retired from the sale of the aforesaid radiators" his selling commission should cease. In our judgment it makes no difference that he did this because of incapacity brought on by his bad habits or that he now endeavors to allege this species of sickness as an excuse for what he did. The controlling facts are that without any adequate legal

excuse he abandoned his work for fifteen months and we think that this must be regarded as a discontinuance of and retirement from his optional position as a sales manager. We certainly can think of nothing much more inequitable than a judgment which requires this defendant to pay upwards of $8,000 for alleged services which, as the result of his own shortcomings, were never in the remotest degree rendered by plaintiff.

We conclude, therefore, that the judgment should be modified by reducing it by the amount of $8,601.77 allowed for selling commissions and, as so modified, it should be affirmed, with costs to the appellant in this court and the Appellate Division.

McLaughlin, Crane and Andrews, JJ., concur; Cardozo and Lehman, JJ., dissent on ground that a contract under seal may be modified by a parol contract whether executed or executory; Pound, J., absent.

Judgment accordingly.