The National Bank of Rochester, Appellant, *v.* Erion-Haines Realty Company and Others, Respondents.

Fourth Department, December 18, 1928.

*Hubbell, Taylor, Goodwin & Moser* [*Clarence P. Moser* and *Frank E. Devans* of counsel], for the appellant.

*William J. Maloney,* for the respondents.

TAYLOR, J. In February, 1914, and for some years before and after that date, defendant George C. Haines (hereinafter called " Haines " since defendant Beda H. Haines is now out of the case) and one John H. Erion were involved together in real estate transactions in the city of Rochester. They seem to have been operating as copartners part of the time, and apparently on different occasions each of them held title in severalty to real estate, the ownership of which was wholly or partially in the other. Shortly prior to July 15, 1914, defendant Haines and Erion organized defendant Erion-Haines Realty Company, a domestic corporation, for use in carrying on their real estate transactions.

May 19, 1924, the National Bank of Commerce of Rochester (hereinafter called " Bank of Commerce ") and this plaintiff entered into an agreement by which, in general terms, the combined assets of the Bank of Commerce and the Traders National Bank of Rochester were purchased by plaintiff. These assets included the promissory note and bond and mortgage involved in this action.

In February, 1914, John H. Erion and wife executed and delivered to the Bank of Commerce a bond and a real estate mortgage as " continuing and collateral security for the payment of any and all indebtedness " of said Erion and his wife, or either of them, to the said bank, then existing or at any time thereafter arising " by reason of notes, drafts or other obligations " of the said mortgagors. May 13, 1924, defendant Erion-Haines Realty Company executed and delivered to Haines its promissory note for the payment of $7,300 three months after date at Bank of Commerce. This note was indorsed and delivered to that bank before maturity. On a prior appeal in this action (213 App. Div. 54) it has been held that defendant Haines was in fact the maker of the note. This note not having been paid, the plaintiff — which had acquired it as stated — sued upon it. Defendants in their answer interposed a counterclaim to the effect that in 1914, and in April, 1923, it was orally agreed by and between the Bank of Commerce on the one part, and Erion and defendant Haines on the other, that the Erion collateral bond and mortgage should be and remain, not general collateral against John H. Erion, according to its terms, but collateral in security of the note in suit only. It is also alleged in the counterclaim that plaintiff took the promissory note in suit and the bond and mortgage, accompanied by all obligations concerning them which rested upon the Bank of Commerce. Defendants' counterclaim has been sustained by the learned trial court.

There has been no effort made to bring the makers of the collateral

bond and mortgage into this action for the protection of any of the parties. However, this would probably be unnecessary for that purpose, under the circumstances. (*Oceanic Steam Nav. Co.* v. *Campania Transatlantica Espanola,* 144 N. Y. 663, 665; *Lamb* v. *Norcross Bros. Co.,* 208 id. 427.)

One of the contentions of defendants is that the bond and mortgage were delivered conditionally, and appellant seems to concede that this issue is raised. There is no allegation in the answer, and no proof to substantiate the claim, that the bond and mortgage in question were conditionally delivered, *i. e.,* that the documents were not to be regarded as delivered as valid instruments until a condition precedent became satisfied. On the contrary, there is an allegation in the answer that the bond and mortgage were " executed and delivered." The only possible theory or claim available to respondents is the one that agreements were made separate from and collateral to the bond and mortgage, which are valid and operative as against both the Bank of Commerce and this plaintiff.

The bond and mortgage in suit are broad and general in their terms as against their makers, the Erions. Even if the proof introduced by defendants is sufficient to establish the claimed oral agreement preceding or attending the making and delivery of the bond and mortgage in February, 1914 — to the effect that the instruments in question, in the possession of the Bank of Commerce, were held as collateral to the note in suit and its predecessors and to no other notes or indebtedness — receipt of such proof in evidence was error, in that it tended to vary the terms of a written instrument cotemporaneously or subsequently executed. (*Lossing* v. *Cushman,* 195 N. Y. 386; *Lese* v. *Lamprecht,* 196 id. 32.) For Haines was not a stranger to the bond and mortgage contract of the Erions. He was not a third party with a separate, enforcible agreement, as will subsequently be made to appear.

Under the findings of the learned trial court — in all the various real estate transactions involved in this case — Erion, either as copartner, joint owner or agent, was substantially the *alter ego* — certainly the privy — of Haines. And the rule interdicting the alteration of a written document by an oral agreement — the parol evidence rule — applies. We are not called upon to say what would have been the result of an action brought to reform the Erion bond and mortgage.

In *Traders' National Bank* v. *Laskin* (238 N. Y. 535) defendants delivered to plaintiff bank their two promissory notes in renewal of two notes made by one Hurwitz to the order of plaintiff and indorsed by defendants. At the same time defendants

delivered to the bank Hurwitz's real estate mortgage as collateral security. This was under a parol agreement that the bank would first apply the proceeds of the mortgage in payment of defendants' notes, and that on payment by defendants of their notes the bank would redeliver the mortgage to defendants. By its terms this mortgage was continuing security for payment of any and all indebtedness of Hurwitz to the bank. The bank sold the premises covered by the mortgage, and applied the proceeds to payments of prior liens and old indebtedness of Hurwitz, with the result that nothing remained applicable to defendants' notes. It was held that the agreement between defendants and plaintiff bank was valid and enforcible.

The instant case is distinguishable from this case in the following respects: The *Traders' National Bank* case does not hold that the bank could not have utilized the mortgage security against Hurwitz, provided it had first used part of its proceeds in payment of defendants' notes; but only that under its agreement with defendants, who were in no wise parties to the mortgage, the bank was obliged to apply the proceeds in the order mentioned in the agreement. Only in case defendants paid their notes themselves was the bank required to return the security to defendants, because it had agreed with them to do so. That agreement was one as to priority in application of proceeds of collateral, coupled with a contract to return the collateral to its transferors upon condition fulfilled by them; it was not — as in the case before us — a parol agreement to substantially narrow the plain terms of a written contract. The learned trial court in the instant case found that Erion was continually indebted to the Bank of Commerce from February 10, 1914, to May 19, 1924, the amount on the last date being over $53,000, and that the financial interests of Erion and Haines were greatly interlaced, as stated earlier in this opinion.

It seems to be undisputed that when the bond and mortgage under consideration were delivered, Erion was holding title to the land for Haines. And shortly thereafter the Erions deeded the land to Haines, who soon deeded it to defendant Erion-Haines Realty Company.

Defendants' proof tends to show, and the learned trial court has found, that the contract made in 1914 to the effect that the Erion bond and mortgage were to stand as collateral solely for two existing notes and their renewals made by Haines and indorsed by Erion were made by the Bank of Commerce with both Haines and Erion, and not — as in the *Traders' National Bank* case — by the Bank of Commerce with Haines only. The note in suit in this case was not given by Haines as additional security for an original

obligation of Erion. The Erion bond and mortgage were delivered by Erion to the Bank of Commerce in February, 1914, and were not delivered by Haines under a special agreement between the bank and Haines, which did not " affect any rights which may be claimed by either party to the mortgage against the other." (*Traders' National Bank* v. *Laskin, supra,* 542.) That is to say, we are not dealing here with a separate transaction and agreement between bank and maker of a promissory note with reference to the application of collateral security binding a third party only, delivered by the maker of the note to the bank cotemporaneously with the execution and delivery of\ the promissory note, as in the *Traders' National Bank* case.

It is also claimed, as stated, that, after the delivery of the bond and mortgage, further agreements were made by the same interested parties, similarly limiting the scope of the instruments as securities. The documents were unquestionably executed under seal for the symbol " [L. s.] " appears after the signatures. (Gen. Const. Law, § 44.) It follows that these contracts could not be modified by the parties to them as to any essentials, either by a parol agreement made after the contracts went into effect or by a documentof lesser solemnity than the originals. (*Cammack* v. *Slattery & Bro., Inc.,* 241 N. Y. 39.) And to all intents and purposes defendant Haines was a party, not a stranger, to the bond and mortgage.

*Imperator Realty Co.* v. *Tull* (228 N. Y. 447) is another distinguishable case, in which an oral agreement, made subsequent to a written contract, was held valid. An extended discussion of the case would unnecessarily amplify this already long opinion.

The other questions raised — whether plaintiff is a holder in due course, whether plaintiff acquired all the obligations of the Bank of Commerce when it acquired the note and bond and mortgage in question, and other points discussed — become immaterial. The counterclaim asserted by defendants deals with a contract still executory, a claimed agreement to alter the terms of an instrument of general signification as against a non-defendant, and to make the instrument apply only to specific obligations of defend-ants. For the reasons given, this counterclaim has not been proved by competent evidence, even as against the Bank of Commerce.

The determination arrived at by this court on the prior appeal (213 App. Div. 54, 56, 57) does not assist respondents. We held that " any equities existing in favor of the defendants as against the payee of the note are available against the plaintiff," stating further that it " cannot be determined upon this appeal " whether

the so-called third defense can " be established under the rules of evidence."

The judgment, so far as appealed from by plaintiff, should be reversed on the law, with costs, and the counterclaim dismissed.

All concur. Present — CLARK, SEARS, TAYLOR, SAWYER and EDGCOMB, JJ.

Judgment so far as appealed from reversed on the law, counterclaim dismissed, and judgment amended accordingly, with costs to appellant.