[Civ. No. 47560. First Dist., Div. Four. Jan. 18, 1982.]

VANCE LURA, Plaintiff and Appellant, v.
MULTAPLEX, INC., Defendant and Respondent.

Counsel

Adam Von Dioszeghy and Grogan, Vogelgesang & Von Dioszeghy for Plaintiff and Appellant.

Glenn E. Thompson, Blacker, Thompson, Zientek & Savage, Thomas A. E. Hesketh, Daryl R. Hawkins and Leland Nerio for Defendant and Respondent.

## Opinion

**CHRISTIAN, J.**—Vance Lura appeals from a judgment in favor of Multaplex, Inc. in litigation concerning commission payments claimed by appellant.

At all relevant times appellant was a full-time employee of a firm known as NorCal Tech. Respondent solicited appellant's assistance in obtaining various business accounts. Appellant succeeded in procuring several customers for respondent. These customers were also customers of appellant's employer; appellant had serviced these accounts for his employer for some time. The present parties' agreement for commission payments was set out in a memorandum, dated April 7, 1975, prepared by respondent. This original written agreement provided that appellant would receive a 5 percent commission on three specified accounts, that accounts might be added as agreed upon by respondent and that commission payments would be made on a particular date following shipment. The parties later amended the agreement to include another account and to provide that respondent would pay no commission for shipments in excess of $40,000 per month. The parties neither discussed nor reached an understanding as to the duration of the agreement. Appellant merely solicited the accounts for respondent; he had no continuing duty of servicing these accounts. Appellant received no direction and no restrictions were imposed on his methods of obtaining the accounts; he did not maintain an office in conjunction with respondent's business. Respondent paid appellant the agreed commission on the accounts through December 1977. In November 1977, respondent notified appellant of its intention to terminate commission payments. Respondent indicated that full and reasonable compensation had been paid for appellant's services. The customers solicited by appellant continued to conduct business with respondent.

At trial, respondent argued that since the agreement failed to provide for the term of commission payments to appellant, it should be interpreted to extend only for a reasonable time. Appellant argued that respondent was obligated to pay commissions as long as the specified accounts obtained by appellant were maintained. The trial court determined that the evidence presented failed to indicate that respondent's obligation should continue indefinitely or until respondent terminated shipments to the specified accounts. Thus, the obligation here could be terminated by either party upon notice after a reasonable time. The trial court then concluded that respondent's notice to appellant was sufficient and reasonable under the circumstances.

Appellant contends that it was error to apply a "reasonable time" standard for termination of the contract; that standard is appropriate where there is no provision for duration and the nature of the contract and surrounding circumstances do not afford a reasonable basis for implying a term. (See, e.g., 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 112, p. 113.) The argument is that the present contract provided, by clear implication, that the term was coextensive with the length of time respondent continued to make shipments to the accounts appellant had procured.

The contract is silent as to duration, and the circumstances do not suggest what the missing provision might have been; respondent on that basis invokes the rule that the court will determine a reasonable term, after which the contract may be terminated at the will of either party. It further contends that public policy supports such a construction of personal service contracts, and that a construction imposing a perpetual obligation should be avoided unless compelled by unequivocal language.

Preliminarily, appellant correctly notes that the interpretation he urges would not create a contract in perpetuity. Since respondent's obligation to appellant is contingent upon its sales to the accounts he secured, the agreement is of a limited duration—until respondent stops selling to those accounts. Further, far from being obligated to make payments forever, respondent could at any time terminate its obligations to appellant by ceasing to sell to the accounts. "The mere fact that an obligation under a contract may continue for a very long time is no reason in itself for declaring the contract to exist in perpetuity or for giving it a construction which would do violence to the expressed intent of the parties." (*Warner-Lambert Pharm. Co.* v. *John J. Reynolds, Inc.* (S.D.N.Y. 1959) 178 F.Supp. 655, 661, affd. 280 F.2d 197.) Respon-

dent's arguments based upon a public policy against contracts in perpetuity are inapposite.

Respondent's arguments based upon personal service contracts must also be rejected. In order to enforce the agreement in the present case according to appellant's interpretation, it is not necessary to force respondent to retain appellant in its employ. The present agreement is unilateral; appellant's only duties were to obtain the accounts, and he had no further duty to service them. Once this performance was executed, the only obligation remaining was that of respondent to pay the agreed compensation. The language in *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, footnote 12 at page 727 [73 Cal.Rptr. 213, 447 P.2d 325], cited by respondent, to the effect that courts are reluctant to compel parties to remain in a relationship of employer and employee is not pertinent.

The agreement sued on by appellant was entered into more than one year after the original agreement of the parties. The new agreement reduced the commission by limiting it to shipments up to $40,000 per month on specified accounts. That change affords some support to the interpretation that respondent's obligations under the original contract would continue indefinitely. Appellant's construction of the agreement also has some support in case law. The reasoning in *Warner-Lambert Pharm. Co.* v. *John J. Reynolds, Inc., supra*, 178 F.Supp. 655, is particularly instructive. In *Warner*, the court granted defendant's motion for summary judgment where plaintiff sought a judgment determining that it was no longer obligated to make periodic payments to the defendant based on the manufacture or sale of Listerine. Payments were made for some 75 years under agreements which contemplated royalty payments for the use of the formula for Listerine—which was a secret when the agreements were entered into. (*Id.*, at p. 659.) Plaintiff argued that as the Listerine formula was no longer a trade secret, it should be relieved of making further payments. Plaintiff further argued that perpetual obligations are disfavored by law, and that a reasonable termination date should be implied where the agreement is silent on that issue. The court rejected these arguments, noting that "[c]ontracts which provide no fixed date for the termination of the promisor's obligation but condition the obligation upon an event which would necessarily terminate the contract are in quite a different category and it is in this category that the ... agreements fall." (*Id.*, at pp. 661-662.) ■ The important factor, then, is not whether the contract fails to specify a termination date, but whether there is an ascertainable

event which necessarily implies termination. The present agreement, like *Warner*, provides for such an event, i.e., the termination of sales to the specified accounts.

Respondent seeks to distinguish *Warner* on the basis that there plaintiff's predecessor had contracted to pay royalties to defendant "and his heirs and successors." But that contractual language was not the basis of the *Warner* decision. *Warner* stands for the proposition that where an obligation is conditioned upon an event connected with the subject matter of the contract, the obligation continues until that event occurs. (See also *Muzak Corporation* v. *Hotel Taft Corporation* (1956) 1 N.Y.2d 42 [150 N.Y.S.2d 171, 133 N.E.2d 688]; *Cammack* v. *J. B. Slattery and Bro.* (1925) 241 N.Y. 39 [148 N.E. 781].)

Consistent with the *Warner* holding, an agreement providing for the payment of a percentage of all billings on sales is subject to the construction that it is to continue for as long as "billings" are made. (*Haggerty* v. *Warner* (1953) 115 Cal.App.2d 468, 471-472 [252 P.2d 373] [allegation of an agreement providing for payments of 5 percent of all billings on sales of "units for talking dolls and on the records for same" sufficiently definite as to duration to withstand demurrer].) Respondent argues that the *Haggerty* agreement was for services already rendered by plaintiff, in contrast to the present arrangement for periodic payment for services to be rendered in the future. This argument is not supported by the facts as appellant rendered all the service required of him when he secured the accounts. The fact that appellant's services were performed after the agreement was entered into in the spring of 1975 does not make his claims less valid; to the contrary, his success in obtaining accounts for respondent constituted consideration. Respondent's argument then, merely reaffirms that appellant fully performed his obligations and was entitled to the agreed upon compensation.

The judgment is reversed.

Caldecott, P. J., and Devine, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 7, 1982.

---

*Assigned by the Chairperson of the Judicial Council.