[Civ. No. 68732. Second Dist., Div. Two. Sept. 15, 1983.]

JANICE SHADE, Cross-complainant and Appellant, v.
CANADIAN INDEMNITY COMPANY,
Cross-defendant and Respondent.

44

**COUNSEL**

Patterson, Schiada & Munt, James Schiada and John H. Caballero for Cross-complainant and Appellant.

Reilly & Zell and Arthur M. Reilly for Cross-defendant and Respondent.

OPINION

**ROTH, P. J.**—At the times pertinent herein, appellant Janice Shade was the owner of some eight parcels of real property, most of them located in Whittier, California. She carried insurance against loss incurred by reason of her ownership with respondent Canadian Indemnity Company (Canadian). Because of the multiple character of her holdings, the coverage afforded by Canadian was evidenced by a single policy of insurance which described the parcels in an attached schedule and Ms. Shade was billed for premiums through a combined statement encompassing all of the properties, one of which consisted of a vacant lot on Chadsey Drive in Whittier. This business mode was reflected in Canadian's insurance policy issued to Ms. Shade for the period October 12, 1975, to October 11, 1976.

For whatever reason, the coverage on the Chadsey Drive property ceased on the latter date, while that related to her other parcels continued.

In September of 1979, Ms. Shade was named as defendant in a suit brought on behalf of Charles Van Fossan II a minor under 14 years of age, wherein it was alleged Ms. Shade was liable for personal injury suffered by the youth on the Chadsey Drive property. She, in turn, notified Canadian of the action, in the expectation it would defend and indemnify. Upon being advised by Canadian the particular parcel was not insured, she filed a cross-complaint against that company, the fifth amended version of which is the subject of this appeal.

In the cross-complaint so amended, additionally to the foregoing facts, it was alleged Ms. Shade had entered into an oral agreement with William Murray (dba the Albright-Murray Agency) (Murray) as the agent of Canadian, whereby it was agreed Canadian's coverage of all her parcels would be renewed annually unless either party instructed the other to the contrary.

The substance of the pleading was expressed in the following fashion.[1]

"5. Cross-Complainant (Ms. Shade) . . . alleges that . . . (Murray) is, . . . an insurance agency authorized to do business in the State of California. Cross-Complainant . . . alleges that . . . (Canadian) is . . . an insurer authorized to conduct business in the State of California, . . .

"6. (Murray), . . . was the agent of . . . (Canadian) . . . for the purpose of securing and placing insurance policies through Canadian. . . .

---

[1]The cross-complaint, while framed as to Canadian in three causes of action, essentially alleged breach of the oral agreement to renew and sought indemnification and attorney fees.

"7. Prior to the date of the personal injuries alleged in the Complaint on file herein, the Cross-Complainant . . . entered into an oral agreement with (Murray), as the agent of (Canadian) herein it was agreed that (Murray) would obtain a liability policy through Canadian for various parcels of real property owned by the Cross-Complainant. One of the parcels of real property to be insured was the property commonly known as 11729 Chadsey Drive, wherein the personal injuries allegedly occurred. Part of the terms of said agreement were that the policy of insurance was to be renewed annually unless either party instructed the other to cancel or not renew it. Pursuant to said agreement, (Canadian) did in fact provide Cross-Complainant with a written policy of insurance for the year October 12, 1975 through October 11, 1976. (Neither Murray nor Canadian) ever notified the Cross-Complainant in any manner that said policy of insurance would be cancelled or not renewed after the initial term set forth above, (nor was the oral agreement to renew ever terminated).

"(Murray) was the agent for (Canadian) and had the express authority to enter into the oral agreement described above. (Murray) represented to Cross-Complainant that he would maintain such policy of insurance for Cross-Complainant until notice to the contrary from either party to the other.

"9. As consideration for the oral agreement Cross-Complainant promised and obligated herself to pay the insurance premiums for said policy as billed to her. Cross-Complainant was billed for and did pay for the policy which covered the year between October 12, 1975 and October 11, 1976. . . . Cross-Complainant maintained various policies of insurance through (Murray) and (was) billed (for) premiums for said policies sporadically and in a combined statement. Thus, Cross-Complainant had no ability to ascertain from the billing statements, whether or not the policy of insurance described above was actually continued in force. Plaintiff has paid all premiums billed to her by (Murray) for the various policies of insurance he obtained for her, and Cross-Complainant has also performed all of the terms, convenants and conditions of the oral agreement and the above described insurance policy that should have been performed by her."

Canadian's demurrer to the fifth amended cross-complaint, like its demurrers to previous versions of the pleading, was sustained on the ground no cause of action was stated and, based on the conclusion none apparently could be, further amendment was denied and the matter, as to Canadian, was dismissed. This appeal followed. We reverse.

■ From the allegations of the cross-complaint set out above it seems apparent what was claimed, most simply stated, was that the insurance pol-

icy issued by Canadian in 1975 did not contain the entire agreement of the parties and was, in fact, augmented by the oral agreement to renew entered into by Murray upon express authority granted him by Canadian, which agreement, supported by the consideration of Ms. Shade's promise to pay premiums "as billed to her," was terminable by notice, but that such notice was never given.[2] Having been prepared to perform her promise to pay premiums associated with all her parcels, as evidenced by the fact she indeed paid those which were billed to her, it was further claimed Ms. Shade should not be denied coverage on the Chadsey Drive property, the termination of which was effected without her knowledge in violation of what constituted the entire agreement entered into by Canadian through its agent.

Respondent counters the construction thus formulated, first, by urging, as it did below, that what was alleged in the cross-complaint was only that Murray had ostensible authority to make the oral contract to renew on behalf of Canadian, and that in order adequately to plead such ostensible authority it was necessary for Ms. Shade "to allege that (Canadian) by some act or negligent omission on its part, caused her reasonably to believe that Murray had the authority to enter into an oral contract to renew on (Canadian's) behalf, that (she) entertained an actual belief, in justifiable reliance on the representation by the principal, that Murray had the authority to enter into the oral contract and that she suffered injury thereby."

It is enough to say, however, that while the cross-complaint makes a single reference to Murray's "apparent" authority, its reliance is upon the allegation he was *expressly* authorized to bind his principal in accordance with the claimed oral agreement, such that, whether or not that allegation can be proved, it is sufficient at the pleading stage to survive a challenge by way of demurrer.

---

[2]In its memorandum of points and authorities in support of the demurrer, Canadian admitted that "If the premiums had been paid on the commencement of the new policy period, (Canadian) would have been obligated to renew since it *gave no notice*" of its intention not to renew as required by Insurance Code section 678, which provides in part that "Unless the insurer, at least 45 days in advance of the end of the policy period, mails or delivers to the named insured . . . notice of its intention not to renew the policy or to condition its renewal upon reduction of limits or elimination of coverages, the insurer shall not fail to renew the policy upon payment of the premium due on the effective date of the renewal, . . ."

In *National Auto. & Casualty Ins. Co.* v. *California Casualty Ins. Co.* (1983) 139 Cal.App.3d 336 [188 Cal.Rptr. 670], Division Four of this court, dealing with similar language appearing in Insurance Code section 663, adopted the conclusion reached in an earlier decision that " 'The plain language of section 663 . . . imports that an insurer's failure to give such (required) notice operates to effect an automatic renewal of the policy, beyond its renewal-expiration date and irrespective of the insured's nonpayment of the renewal premium. . . .' " (*Id.*, at p. 341.)

Owing to our disposition herein, it is unnecessary for us to address the question whether the rationale of *National Auto.* is equally applicable in respect of section 678.

Canadian's further points, that the consideration for the insurance contract necessarily was the actual payment of premiums on the Chadsey Drive parcel and that the oral agreement amounted to a disfavored contract in perpetuity are dispelled, we think, in the first instance by familiar principles of contract law having to do with excused or discharged performance (see generally 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 584) and in the second by the observation renewal was to occur only until either party gave notice it would not. (See *Lura* v. *Multaplex, Inc.* (1982) 129 Cal.App.3d 410, 414-415 [179 Cal.Rptr. 847].)[3]

The order appealed from is reversed and the cause is remanded with instructions that Canadian's demurrer to the fifth amended cross-complaint be overruled upon such further terms as the trial court deems appropriate.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied October 14, 1983.

---

[3]We note in passing that no contention was made below nor is any argument urged here in terms of the parol evidence rule, undoubtedly because it was recognized the rule, though substantive, depends in its modern applications on whether the terms of a writing were intended by the parties as a final expression of their agreement, a question which in most cases, like this one, could not be resolved on demurrer. (See Code Civ. Proc., § 1856; Civ. Code, § 1625; 31 Cal.Jur.3d, Evidence, §§ 330, 331, 334, 347; 39 Cal.Jur.3d, Insurance Contracts, §§ 15, 16.)