Virginia **RICHMOND**, Appellant,

v.

Albert **WEINER**, as Executor of the
Estate of Harry Soforenko,* Appellee.

No. 18997.

United States Court of Appeals
Ninth Circuit.

Sept. 9, 1965.

Rehearing Denied Dec. 15, 1965.

---

* Mr. Weiner as such estate executor was as appellee substituted for Harry Soforenko, the original appellee who died pending this appeal. The word "appellee" in this opinion refers to the original appellee Soforenko in this case except that where the context so indicates, "appellee" refers to Weiner as executor of the deceased Soforenko's estate.

Virginia Richmond, in pro. per.

Sidney Dorfman, Beverly Hills, Cal., for appellees.

Before CHAMBERS and JERTBERG, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

Before us is appellant's appeal from the Trial Court's judgment adverse to appellant (plaintiff below) in her action for infringement of copyrights, delivery up to appellant of the copyrights and recovery of damages for appellant, and in appellee's counterclaim, he sues for declaration of appellee's asserted rights in the copyrights.

The Trial Court had jurisdiction under 17 U.S.C.A. § 1 et seq. This Court has jurisdiction under 28 U.S.C.A. §§ 1291 and 1294.

Early in the trial below, the Court directed that in order to better conserve the Court's work time and for its convenience, the important issue as to whether appellant was the sole owner or, with appellee (defendant below), a joint owner of the copyrights in question should first be tried, because if it should be determined that appellee is such a joint owner, this infringement action might be ended without further trial, since a copyright owner cannot infringe against his own copyright.

The principal issue on this appeal as at the trial is whether appellee is a joint owner with appellant of the copyrights, particularly those related to Medical Practice Informant and its parts recorded in appellant's name in the patent office, although other issues and alleged errors dealt with in the trial will be reviewed.

Both parties admit, as did appellant's counsel during the trial, that since about June-July, 1957 and during approximately the first eight months, and until their business breakup, in 1958, they were engaged in a joint venture (at first oral and later written) producing, publishing and selling General Practice magazine, originated by appellee, and Medical Practice Informant and its parts in her name copyrighted by appellant. The parties, however, since their breakup, have been adamant in their respective contentions, appellee claiming joint ownership with appellant of the copyrights and appellant denying such claim of appellee and asserting appellant's exclusive ownership of the copyrights.

Although admitting the joint venture for the production and sale of the copyrighted materials, appellant at all material times has denied and now denies that she ever did convey or intend to convey to appellee any proprietary title or interest in or to the copyrights relating to Medical Practice Informant (also called MPI) or to any of its parts. Appellee has at all such times claimed for himself a one-half joint ownership interest in all such copyrights.

Appellant claims that prior to her becoming a business associate of appellee she owned two publishing houses, a recording company and numerous copyrights, and had written the musical comedy "Cheesecake and Horses", and songs, words, music and medical poetry. The appellee, a licensed physician, at the trial claimed to have for about twenty years since 1938 published medical magazines, including General Practice magazine.

Pursuant to their June-July 1957 oral joint venture, appellee provided qualified personnel to do the researching, compiling and editorial work of MPI, supplied money and credit for printing and sales work, was in charge of sales, and made three sales of excerpts from MPI to pharmaceutical houses in 1958, one in February, one in May and one in August.

All of these sales were made and paid for before appellant undertook to repossess the copyrights and while she and appellee were still working together in pursuance of the joint venture.

In furtherance of the plans and purposes of the June-July 1957 oral joint venture, the parties signed a written agreement dated February 7, 1958, in evidence as Plaintiff's Exhibit 71, also sometimes called Exhibit A, by which appellee agreed to transfer all of his right, title and interest in the General Practice magazine and appellant agreed to convey all her right, title and interest in Medical Practice Informant to General Practice Publishing Co., Inc., a corporation to be created and used by them in their joint venture.

At the trial the parties stipulated that the General Practice Publishing Co., Inc., was formed as contemplated in the February 7, 1958 written agreement, and that the Commissioner of Corporations granted a permit to the corporation to issue 250 shares of stock alike to appellant and appellee, but none of the stock was actually issued because of later disputes between the parties. However, with the help of both of them, the production and sale of MPI continued through the General Practice Publishing Co., Inc., each of the parties co-signed checks for the corporation on a bank account in the corporate name, some of those co-signed checks so drawn were payable to appellant in substantial amounts, she had the use of a company car, she continued to be and is still secretary-treasurer of the corporation and more significantly she as such corporate officer transacted in the corporate name important corporate business.

Both appellant and appellee were called as witnesses and gave testimony at the trial. Appellant testified that she at all times expressly stated and emphasized to appellee that she wished to retain and in all her related acts intended to and did retain all proprietary interests in her copyrights, and that all she ever granted or intended to grant to appellee were rights for him to share equally with appellant in the use and production of her copyrights and in the profits realized from such use and production and from sales of copyrighted products. She as a witness at the trial and as appellant on this appeal has vehemently contended and does contend that she has not by any written or oral statement or by any conduct conveyed, intended to convey or in any manner transferred to appellee any proprietary right in any of her copyrights including the ones respecting Medical Practice Informant and its parts.

Appellee at the trial also testified with equal vehemence and now on this appeal in substance and effect contends that, in the parties' 1957 oral joint venture agreement, in the written terms of their February 7, 1958 joint venture and in their conduct and attitude regarding their mutual property interests and at all material times until their disagreement which occasioned this litigation, the parties mutually agreed that appellee would and he did transfer to the joint venture all of his right, title and interest in appellee's magazine General Practice, and that appellant would and did transfer to the joint venture all her right, title and interest in Medical Practice Informant and its parts copyrighted in her name, and that appellee in joint venture with appellant was a joint owner of such copyrights.

As he contended in the Trial Court and now contends, appellee at the trial in substance and effect orally testified (1) that in March 1957 appellee employed appellant to, and appellant did, perform certain services in connection with the publication of General Practice magazine; (2) that thereafter, prior to February 1958, appellee and appellant together conceived the idea for, compiled, edited, co-authored and arranged for publication of, the book Medical Practice Informant, as to which and its related business the parties were co-owners and joint venturers; (3) that to further their joint venture business relationship, the parties under date of February 7, 1958 entered into a written agreement, in evidence as plaintiff's Exhibit 71 and also

as Exhibit A, providing, among other things, that the parties would form, with each owning one-half the corporate stock of, General Practice Publishing Co., Inc., a new corporation to which would be assigned all of appellee's right, title and interest to General Practice magazine and all of the right, title and interest of appellant to said Medical Practice Informant, a book to be published and sold to doctors; and (4) that the parties did form that new corporation and for several months until about the end of August 1958 carried on the contemplated joint venture business in the name of the new corporation, although its corporate stock was never issued and such issuance was finally prevented by the state corporation commissioner upon his receiving notice of the breakup of the parties' business relations near the end of August 1958.

Upon the allegations, contentions and evidence before it, the Trial Court decided that the book Medical Practice Informant and its parts were compiled, written, printed, published, owned, sold and distributed by the joint venture created by appellant and appellee, and that the copyrights in and to the book Medical Practice Informant and all its parts, registered in appellant's name, were owned in joint venture by appellant and appellee as joint owners of the copyrights, and that as such joint owner appellee could not infringe his own copyrights. The Trial Court orally summarized its findings in substance as follows:

"That there were copyrights claimed and infringement claimed. That I held the copyrights to be owned in joint venture by the plaintiff and defendant, and therefore there could be no infringement. An owner cannot infringe his own copyright."

In view of the foregoing, the Trial Court held that appellant take nothing by this action.

 In oral argument before this Court appellant contended that the Trial Court erred in that decision, first, because the proof was limited to the issue of copyright joint ownership and appellant in her proof was by the Court improperly confined to evidence of what was said or done respecting the creating of such joint ownership when after severance for separate trial of the ownership issue and without diverse citizenship of the parties, says appellant, there was no federal jurisdiction to try such ownership issue alone; and second, because appellant was improperly prevented by the Trial Court from adducing evidence of fraud by appellee in obtaining such proprietary interest, if any, as he obtained in the copyrights.

In effect, appellant in her opening brief states that, on the whole case, being one for redress of alleged copyright infringement, the Trial Court did have jurisdiction, but during the trial and here she did and does now contend that, upon severance and separate trial of the non-federal copyright ownership issue alone, the Trial Court lost and did not have jurisdiction to try that issue alone, and that, therefore, this Court does not have appellate jurisdiction to review the merits of the Trial Court's action on that non-federal issue.

At the trial, however, the following occurred:

"THE COURT: Let's decide that issue (ownership) before you take up anything else. I believe we will save your time and the Court's time. Can't you do that?

MR. STELL (appellant's counsel): I can do that.

THE COURT: All right, let's do that." (Parentheses added.)

A federal trial court in its discretion may upon its own motion properly separate an issue from others and confine the introduction of evidence to that separated issue alone if the court in the exercise of reasonable discretion thinks that course would save trial time or effort or make the trial of other issues unnecessary. That is true of issues as to which the court would not have jurisdiction but for their relation to other issues within

the court's jurisdiction. Whether there should be severance and separate trial of an issue is primarily a question concerning the court's trial procedure and convenience, not a question concerning the merits of the case. In this case, the Court's jurisdiction to determine the merits of the whole case, including the trial-separated non-federal issue as well as the remaining issues within its jurisdiction awaiting disposition, continues undiminished by such severance and separate trial of the copyright ownership issue. Rule 42(b), F.R.Civ.P.; Moss v. Associated Transport, Inc., D.C., 33 F.R.D. 335; Fidelity & Casualty Co. of New York v. Mills, 5 Cir., 1963, 319 F.2d 63. In Chicago G. W. Ry. Co. v. Chicago B. & O. R. Co., 8 Cir., 1952, 193 F.2d 975, 978, it was held:

"Where jurisdiction attaches by reason of a federal question it extends to the whole case and all its issues, federal or non-federal. Indeed, in such circumstances the court may decide the issue on state law alone, without deciding the federal question. Here it appears from the complaint * * * that plaintiffs' claims were bottomed on a substantial federal question, and hence, the court had jurisdiction to dispose of all issues when a determination of such issues became necessary or appropriate in the administration of justice."

We hold the Trial Court properly separated for trial the copyright ownership issue, did have jurisdiction of the separated issue and did not improperly restrict the method and scope of proof on that issue.

■■ In connection with her objection to the Trial Court's severance and separate trial of the copyright ownership issue, appellant assigns as additional error the Court's failure to receive evidence that appellee's ownership interest, if any, in appellant's copyrights was acquired through fraud and was, therefore, invalid.

The law requires that fraud as an issue be specifically pleaded as indicated by the following:

"Clearly, in an action for deceit, or other suit in which the cause of action is based directly upon fraud, the fraud must be pleaded." 24 Am. Jur. 72.

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b), F.R. Civ.P.

"A pleading requisite to enable the party who files it to offer parol evidence of fraud in a written contract for the purpose of avoiding the contract should contain allegations of the fraud that are clear and positive." 24 Am.Jur. 74; 56 A.L.R. 148.

Here appellant did not, in her original complaint, in her answer to appellee's counterclaim or in the pretrial order, allege or contend that the written contract of February 7, 1958 itself or any property right or interest thereunder was obtained by appellee through fraud. The record does not disclose that any evidence of fraud or deceit on the part of appellee was received at the trial, although the record does reflect indications that such evidence was or would be available for use at the trial by appellant. She, however, did not offer any such evidence, and the Court, and counsel in their briefs and arguments, did not treat the issue of fraud as if it were supported by relevant admitted evidence. There was no evidentiary basis for amending the pleadings to accord with the proof. There was no waiver of the pleading requirement as to fraud. We, therefore, on this appeal cannot consider that issue, because appellant did not plead it or validly bring it before the Trial Court, and that Court properly did not determine it. United States v. Waechter, 9 Cir., 1952, 195 F.2d 963, 964; Pacific Queen Fisheries v. Symes, 9 Cir., 1962, 307 F.2d 700, 719–720; Monge v. Smyth, 9 Cir., 1956, 229 F.2d 361, 366, Syl. 2.

■ Contending that notice of the Court's findings [1], conclusions and judgment of August 8, 1963 was not given her, appellant asserts as error the Trial Court's August 27, 1963 order vacating its August 26, 1963 minute order which, after a hearing on that day participated in by the parties, set aside said findings, conclusions and judgment of August 8, 1963 for the limited purpose of allowing appellant to make her motion for new trial which without such setting-aside order was time barred. The vacating order complained of was entered by the Trial Court on the first day after that August 26th hearing and on the same record as that existing when the August 26th order was entered and without further hearing or additional proof, and was obviously meant by the Court as the corrected, complete and finally considered order covering the subject of the hearing on the day before. In that situation, a federal trial court may, as the Court below did, vacate, amend and correct its orders. When that is being done, as was held in Suggs v. Mutual Ben. Health & Accident Ass'n, 10 Cir., 115 F.2d 80, 82:

"It makes no difference whether the attention of the court is directed to a further consideration of its judgment by a pleading filed as a matter of right, or by a pleading which has no standing in the case as a matter of law, or springs from the court itself. * * *

* * * * * *

"That at the conclusion of its consideration the court adhered to its former judgment does not alter the situation."

See Zimmern v. United States, 298 U.S. 167, 169–170, 56 S.Ct. 706, 707, 80 L.Ed. 1118, holding that

"The judge had plenary power * * to modify his judgment for error of fact or law or even revoke it altogether."

We reject appellant's claim of error based on the Trial Court's August 27th order vacating and changing its ruling in its minute order of August 26, 1963.

■■ Whatever rights appellee may have acquired or claimed by virtue of the February 7, 1958 contract, he has at all material times claimed to be a joint owner of the copyrights for the book Medical Practice Informant and its parts, and in that connection contends that he jointly with appellant conceived, compiled and created that book and its parts for which appellant obtained only in her name the related copyrights. That work effort of appellee is evidenced by his own testimony and that of corroborating witnesses, and we regard as established, as undoubtedly the Trial Court did, the fact that appellant and appellee co-authored that book and its parts. Since that book and its parts were so jointly conceived, compiled and created by the joint efforts of both appellant and appellee and "equity regards as done that which ought to be done" (19 Am.Jur. 316), appellant although having the copyrights registered in appellant's name only held the same in trust for the joint venture and appellant and appellee as its two members. Appellee, therefore, was and is at all material times in lawful right a joint owner with appellant of the copyrights covering the book Medical Practice Informant and its parts. Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 2 Cir., 1955, 140 F.2d 266, 268. As such owner appellee could not and did not infringe such copyrights, and we agree with the Trial Court in so ruling.

■ Appellant objects to the Trial Judge's interrogating witnesses and charges that the Judge displayed malice and prejudice in the conduct of the trial. It should be noted that this case came before this Trial Judge as the latest trial proceeding among four separate court cases before different judges or courts involving some matter connected with the mutual business relations of appellant and appellee. In three of the cases including this one they have been adver-

---

[1]. Although the giving to appellant's counsel of such notice by mail was attempted by appellee's counsel, appellant's counsel denied ever receiving it.

sary parties. In the fourth case they together sued a former employee. In a previous trial of this adversary case before another judge, a mistrial had been ordered because that judge had entered a pretrial order under the mistaken belief that it had been approved by both parties, —a fact later denied by one of them with acrimonious undertones. Throughout the retrial of this case in the Court below there was a hostile and bitter attitude of parties or witnesses, one against another.

The record of such retrial discloses in the testimony of some of the important witnesses a marked degree of partisanship and a proneness to anticipate questions and to make voluntary or unresponsive answers to the questions asked. Also, experienced counsel in notably significant situations failed in some instances to pursue the Court's suggested line of inquiry of the witnesses and in other instances failed to frame questions so as to avoid voluntary and non-responsive answers. In a number of such instances the Trial Judge did personally interpose his inquiries and himself interrogated the witnesses. But in all those instances the record appears to this Court to reflect in the Trial Court's questioning the witnesses and in his attitude a proper desire on that Court's part to avoid needless labor and time consumption by the Court, counsel and witnesses, and to appropriately expedite the trial proceedings. Considering all of the complained of occurrences in the light of the whole record, we find no malice or prejudice in the Trial Judge's attitude towards either of the parties or their witnesses and no failure by the Trial Judge to accord to them due process of law.

In a comparable situation, this Court in Ochoa v. United States, 9 Cir., 1948, 167 F.2d 341, 344, held:

"* * * it is the right and duty of the Federal trial judge to facilitate, by direct participation, the orderly progress of a trial. Queries by the judge which aid in clarifying the testimony of witnesses, expedite the examination or confine it to relevant matters in order to arrive at the ultimate truth, are eminently proper so long as this authority is exercised in a non-prejudicial manner."

See also Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, 448; Glasser v. United States, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680, 705. Upon those authorities and the facts above related, we hold that both of these parties had a fair trial.

Alleged errors, objections, contentions and arguments other than the foregoing have been urged by appellant. All of them we have carefully considered, but find no merit in them.

Our thorough consideration of the record convinces us that as to each and all of the Trial Court's findings they are not clearly erroneous but on the contrary are supported by ample credible evidence.

The action of the Trial Court in this case is affirmed.