Jack **CORTNER** and Jon **Silberman**, Plaintiffs-Appellants,

v.

Robert **ISRAEL**, Score Productions, Inc., American Broadcasting Music, Inc., and ABC Sports, Inc., Defendants-Appellees.

No. 598, Docket 83–7789.

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1984.

Decided April 5, 1984.

Robert C. Osterberg, New York City (Abeles, Clark & Osterberg, New York City, of counsel), for plaintiffs-appellants.

Michael J. Calvey, New York City (Peter M. Nelson, Coudert Bros., New York City, of counsel), for defendants-appellees American Broadcasting Music, Inc. and ABC Sports, Inc.

Zissu, Stein & Mosher, New York City (James Mosher, New York City, of counsel), for defendants-appellees Robert Israel and Score Productions, Inc.

Before MANSFIELD, PIERCE and WINTER, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal illustrates the confusion that can occur when lawyers indiscriminately use multiple contracts (some on standard forms) in the transfer of copyright interests without giving careful consideration to the consequences of their action. Plaintiffs-appellants, authors of an original musical work used as a broadcast theme by defendant ABC Sports, Inc. (ABC), appeal from an order of the Southern District of New York, Gerard L. Goettel, J., granting summary judgment dismissing their claim for copyright infringement. We affirm on the ground that plaintiffs assert only a claim for breach of contract over which, absent diversity of citizenship, we have no jurisdiction.

In 1976 plaintiffs and Joe Sicurella composed an original musical piece, later called "ABC's Monday Night Football Theme," which they assigned to a company called "The SST Group, Inc." (SST), apparently their own corporate vehicle. On September 1, 1976, SST simultaneously entered into three written agreements: one typewritten agreement with ABC Sports, Inc., consented to in writing by the three composers (Ex. A), a second printed agreement with the three composers, signed by American Broadcasting Music, Inc. (hereinafter referred to collectively with ABC Sports, Inc. as "ABC") (Ex. B), and a third (also on a printed form entitled "Uniform Popular Songwriters Contract") with the three composers, witnessed by Ron Schubert, ABC's Director of Music and Music Publishing (Ex. C).

By the third contract (Ex. C) the composers assigned to SST their rights, including copyrights, in the theme (described as a "heretofore unpublished original musical composition") in exchange for its agreement to pay them specified royalties for the various rights granted, including small performing rights through the music rights organizations of which they were members (e.g., ASCAP or BMI), sheet music publishing rights, orchestrations, licenses for mechanical reproduction, and television broadcasting. The rights were granted to SST subject to certain specified conditions. For instance SST obligated itself to render periodic royalty statements to the composers together with remittances of royalties due. The composers reserved the right to examine SST's books and, upon its failure to make them available, to terminate the contract. SST was granted the right to assign or transfer to another the rights assigned to it only upon the composers' written consent and upon the assignee's agreement to be bound by all of the obligations assumed by SST.

The second of the contracts (Ex. B) purported to be an agreement between the composers and SST, also signed by ABC, in which the composers represented that they had written and composed the original musical composition "ABC'S Monday Night Football Theme" and agreed to assign all rights in it to SST. In return SST agreed to pay the composers specified royalties for piano-forte and other copies that might be published and a percentage of revenues received from the licensing of the mechanical, electrical, motion picture and TV rights to the theme. The composers were also to receive from their performing rights societies such payments as might be due them for performance rights. The composers consented to the assignment of the contract, the composition, or any copyright therein, to a third party, "subject, however, to the payment of the royalties herein specified." The agreement was signed by the three composers, SST and ABC.

Under the first contract (Ex. A) SST agreed to furnish to ABC for its *Monday Night Football* television program music materials composed by the three individuals in exchange for payment by ABC to SST of $9,000 for costs, expenses and services incurred by SST in composing and delivering the materials plus such payments as might be required to be made by ABC to the three composers under the attached songwriter's contract (Ex. B above). It was further agreed that in consideration of these express obligations, ABC was granted all publishing and mechanical rights in the musical materials as its sole and exclusive property, with no obligation to broadcast them. Payments under the attached songwriter's contract were to be made by ABC to SST for the three composers. The composers expressly consented to such a payment plan.

On November 8, 1976, ABC filed with the U.S. Copyright Office a claim to the copyright in the theme composed by appellants, listing them and Sicurella as the authors.[1]

---

**1.** Although ABC mildly suggests that appellants created the 1976 theme as employees for hire, 17 U.S.C. §§ 101, 201(b), and that it is therefore presumed to be the author, *see Brattleboro Pub-* *lishing Co. v. Winmill Publishing Corp.,* 369 F.2d 565, 567 (2d Cir.1966), 1 *Nimmer on Copyright* § 5.03[D] (1983), we are satisfied from its copyright registration naming appellants as the au-

From 1976 to 1980 ABC used the theme as part of its *Monday Night Football* broadcasts. In 1980 it commissioned the defendants Robert Israel (Israel) and Score Productions, Inc. (Score) to write a new, similar derivative theme for future use on the same program, which it subsequently registered with the Copyright Office in its own name, listing Israel and Score as employees for hire. Since that time ABC has broadcast the new theme on its Monday night program, discontinuing use of the theme composed by appellants.

On December 1, 1982, appellants instituted the present action for infringement of their alleged interest in the 1976 copyright, claiming that the defendants Israel and Score had infringed plaintiffs' copyright interest by copying plaintiffs' theme and by recording and performing the replacement. The appellants joined ABC, the legal owner of the copyright in plaintiffs' theme, as a party-defendant because it refused to join in the action as a plaintiff. The complaint seeks injunctive relief and an accounting for royalties due. The defendants filed answers denying the alleged infringement and asserting among their affirmative defenses that the court lacked jurisdiction over the subject matter. On March 3, 1983, the defendants moved for summary judgment on the ground that they had not infringed the 1976 copyright because ABC is the sole and exclusive owner of all right, title, and interest in the copyright of the musical composition created by the plaintiffs and that as such it properly employed Israel and Score as "writers for hire" to create the 1980 derivative work, of which it is also the sole owner.

On August 19, 1983, Judge Goettel handed down an opinion granting summary judgment dismissing the complaint on the ground that under the contracts entered into by the parties the plaintiffs transferred their entire copyright interest to SST and ABC and the plaintiffs did not retain any beneficial or equitable interest in the

copyright entitling them to sue for infringement.

### DISCUSSION

The initial question is whether ABC acquired from appellants the *entire* copyright interest in the musical theme composed by them or whether they retained some beneficial interest in the copyright. If they retained no interest in the work the dismissal of their infringement claim must, of course, be affirmed. If, on the other hand, they retained some beneficial interest we must determine whether that interest is enforceable against the defendants.

 Appellants argue that they have a sufficient beneficial interest in the original copyright to give them standing to sue infringers and that the district court erred in ruling to the contrary. We agree. It is true that Exhibit A, the agreement between ABC and The SST Group, Inc., which was consented to in writing by the three composers, provides that the music composed by them and all rights therein shall be ABC's "sole and exclusive property to do with as we [ABC] wish, free of any obligation other than as set forth expressly herein" (Par. 2), and expressly relieves ABC of any obligation to use or broadcast the materials composed by appellants (Par. 8). However, ABC, as assignee, simultaneously assumed SST's obligation as publisher in the other two contracts to pay the appellants such royalties as might be earned from the exploitation of the theme. Although ABC had the right not to exploit the property, the parties clearly contemplated that it would do so, as indeed it did, resulting in the payment of royalties to the composers by the performing rights society of which they were members. Otherwise there would have been no point in negotiating lengthy contracts dealing with the royalties they might realize from the publication and performance of their work. Under these circumstances we are satisfied that their right to royalties, although contingent on ABC's exploitation of the theme,

thors, from its own references to them in its brief as the authors, and from its negotiation of

royalty terms with them, that they are legally the authors of the theme.

gave them a sufficient beneficial interest in the copyright to give them standing to seek judicial relief under the copyright law against infringement, both under the 1909 Copyright Act, see *Manning v. Miller Music Corp.*, 174 F.Supp. 192 (S.D.N.Y.1959), and under the 1976 Act, 17 U.S.C. § 501(b). When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright. *Manning v. Miller Music Corp.*, *supra*, 174 F.Supp. at 195–97; *Alexander v. Irving Trust Co.*, 132 F.Supp. 364, 369 (S.D.N.Y.), *aff'd*, 228 F.2d 221 (2d Cir.1955), *cert. denied*, 350 U.S. 996, 76 S.Ct. 545, 100 L.Ed. 860 (1956); *Hoffman v. Santly-Joy, Inc.*, 51 F.Supp. 778, 778–79 (S.D.N.Y.1943). Otherwise the beneficial owner's interest in the copyright could be diluted or lessened by a wrongdoer's infringement. As the Supreme Court of New York, Appellate Division, First Department, noted in *Nelson v. Mills Music*, 278 App.Div. 311, 104 N.Y.S.2d 605 (1951), concerning the duties of the publisher towards the songwriter: "While defendant was not obligated to promote the sale of plaintiffs' song, it was certainly obligated to exercise good faith towards plaintiffs and not use plaintiffs' composition for the purpose of fashioning a competing song to be sold in place of plaintiffs' song." *Id.* at 607.

Prior to the adoption of the 1976 Copyright Act, 17 U.S.C. §§ 101, 501(b), the beneficial owner, in order to have standing to sue the infringer, was required to join the owner of the copyright as a defendant, alleging that the latter had refused after demand to sue. *See, e.g., Kriger v. MacFadden Publications, Inc.*, 43 F.Supp. 170 (S.D.N.Y.1941); *Schellberg v. Empringham*, 36 F.2d 991 (S.D.N.Y.1929). The 1976 Copyright Act merely codified the case law that had developed under the 1909 Act with respect to the beneficial owner's standing to sue. Section 501(b) of the 1976 Act provides that "[t]he legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement.

17 U.S.C. § 501(b). The legislative history accompanying the Act notes: "A 'beneficial owner' for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 159, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5659, 5775. Nimmer notes that the 1976 codification of the standing of beneficial owners "follows the law established by the courts under the 1909 Act." 3 *Nimmer on Copyright* § 12.02. We therefore conclude that appellants have standing to sue for infringement of their beneficial interest in the copyright, regardless whether the case is governed by the 1909 Copyright Act or the 1976 Copyright Act. It thus becomes unnecessary for us to resolve the issue of which Act applies.

■ A more troublesome question is whether ABC and those commissioned by it to compose the replacement theme (Israel and Score) can be charged with infringement of appellants' beneficial interest in the original copyrighted theme. Infringement is the violation of an owner's copyright interest by a non-owner. 17 U.S.C. § 501(a). The purpose of an infringement suit is to protect the owner's property interest. It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement. *Richmond v. Weiner*, 353 F.2d 41, 46 (9th Cir.1965), *cert. denied*, 384 U.S. 928, 86 S.Ct. 1447, 16 L.Ed.2d 531 (1966); *Donna v. Dodd, Mead & Co.*, 374 F.Supp. 429, 430 (S.D.N.Y.1974); *Picture Music, Inc. v. Bourne, Inc.*, 314 F.Supp. 640, 646 (S.D.N.Y.1970), *aff'd*, 457 F.2d 1213 (2d Cir.), *cert. denied*, 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972).

■ The copyright owner possesses the rights to reproduce the copyrighted work and to prepare derivative works based on the copyrighted work, 17 U.S.C. § 106, and he may employ others to pro-

duce derivative works for hire, in which event, the owner, in the absence of a contrary agreement, acquires the copyright to the new material in the derivative work, 17 U.S.C. §§ 103(b), 201(b); *Russell v. Price,* 612 F.2d 1123, 1128 (2d Cir.1979), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980). Moreover, when a derivative work, whether or not it falls within the types that may be the subject of a "work made for hire," see 17 U.S.C. § 101, is commissioned by the copyright owner of the work from which it is derived and produced with that owner's consent, the derivative composition does not infringe the pre-existing composition. 1 *Nimmer on Copyright* § 3.06 (1983) ("the consent of the copyright owner of the pre-existing work is necessary in order to render the derivative or collective work non-infringing").

■ Applying these principles here, it is clear that ABC, being the owner of legal title to the underlying copyrighted theme, cannot be held liable for infringement under the Copyright Act and that defendants Israel and Score, being either employees for hire in the production of ABC's replacement theme or persons commissioned by ABC as owner of the legal title to create a work derived from the pre-existing theme, cannot be liable for infringement. It may well be, as Judge Goettel suggested, that ABC might be liable to appellants in a state court action at common law for breach of an implied obligation not to use the musical theme in a way that would deprive appellants of their right to royalties. *See, e.g., Nelson v. Mills Music,* 278 App.Div. 311, 104 N.Y.S.2d 605 (1951). But we lack diversity jurisdiction over such a contract action since the plaintiffs are all New York citizens and the defendant companies are incorporated under New York law.

The order and judgment of the district court are affirmed.

PIERCE, Circuit Judge, concurring:

I concur fully in the majority opinion and write separately only to address the following point.

The district court made an express determination, albeit reduced to a footnote, that "the 1909 Act governs this lawsuit because the 1976 Copyright Act did not take effect until January 1, 1978." *Cortner v. Israel,* 568 F.Supp. 1217, 1218 n. 3 (S.D.N.Y.1983). The district court could have resolved the standing issue without deciding whether the 1909 Act or the 1976 Act applied. Since the district court did make this distinction, it is appropriate for this court to explain why we disagree with the district court's determination. As the majority opinion makes clear, on the facts of this case, the appellants herein had standing to sue both under the 1909 Copyright Act and the 1976 Copyright Act. Determinations of important questions as to which of the Copyright Acts applies when events occur that seem to come within the scope of both Acts will have to await another case and another day.

WINTER, Circuit Judge, concurring in the result:

I concur entirely in Judge Mansfield's discussion of whether these particular defendants can ever be liable for infringement of the musical composition in question and with his conclusion that, since they own legal title to the copyright, no liability for infringement exists.

However, I strongly object to the inclusion in the opinion of the discussion of whether these particular plaintiffs have a sufficient beneficial interest in the original copyright to allow them to bring infringement actions. The discussion is entirely unnecessary to the ruling on the judgment and is thus gratuitous dicta. To purport to rule on this question is particularly inappropriate since the issue is hotly contested and has no governing precedent in this court. It is also a complex issue of some importance, involving the interrelationship of two pieces of legislation enacted some sixty-seven years apart and governing the rights of many authors of intellectual property. I by no means suggest that Judge Mansfield's discussion reaches an erroneous conclusion, but, should the issue arise

again, I shall not regard myself as bound by anything said in the present case.