L. Jeffrey **SELZNICK**; Daniel Selznick; Larry Larson, individually and as Administrator of the Estate of Florance Selznick Howard; Melissa Oshier Larson; and Susan Archer, Plaintiffs,

v.

**TURNER ENTERTAINMENT CO.** and Does 1 through 20, inclusive, Defendants.

No. CV–96–5025 KMW (MCx).

United States District Court, C.D. California.

Nov. 3, 1997.

Bradley A. Raisin, Coleman & Raisin, Los Angeles, CA, for Plaintiffs.

Michael Eidel, Weissman Wolff Bergman Coleman & Silverman, Beverly Hills, CA, Frank Rothman, Harriet Posner, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, CA, for Defendants.

WARDLAW, District Judge.

### MEMORANDUM OF DECISION AND ORDER RE: CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

By these cross-motions for partial summary judgment, the parties ask the Court to determine whether Turner Entertainment Co. ("Turner"), the successor in interest to Loew's Incorporated ("Loew's"), today enjoys the exclusive right to distribute the motion picture *Gone with the* Wind (the "Picture") or whether it shares nonexclusive distribution rights with the heirs of David O. Selznick ("Plaintiffs"),[1] whose independent movie studio produced the Picture. Turner claims exclusive rights on three bases: (1) the 1938 Agreement; (2) the theory of implied contract; and (3) renewal of the copyright in the Picture in solely the name

---

1. The plaintiffs in this action originally were L. Jeffrey Selznick, Daniel Selznick, Larry Larson, individually and as administrator of the estate of Florence Selznick Howard, Melissa Oshier Larson and Susan Archer. On September 24, 1997, the Court ordered, pursuant to stipulation of the parties, that Barbara Selznick as executrix of the L. Jeffrey Selznick estate be substituted for him, and Larry Larson, as special administrator of the Estate of Melissa Oshier Larson, be substituted for her, as plaintiffs.

of Turner's predecessor in interest. For the reasons described below, the Court finds that the plaintiffs have a beneficial interest in the rights to the Picture, which does not include the rights to transfer legal title to their interest or to grant nonexclusive rights to exploit the Picture to third parties. The Court expressly reserves the question whether the beneficial owners may be held liable for copyright infringement for their own exploitation of the Picture.

## I. FACTUAL BACKGROUND

The undisputed facts are as follows. The novel *Gone With The Wind* was originally published in June 1936. At that time, David O. Selznick ("Selznick") was a producer of motion pictures, and had recently formed an independent movie studio, Selznick International Pictures, Inc. ("SIP"). Shortly before *Gone With The Wind was* published, SIP purchased motion picture and other rights relating to the book by an agreement dated July 30, 1936 from the author ("the 1936 Agreement"). Declaration of Jeffrey Selznick ("Selznick Decl.") Ex. A.

Before any of the roles were cast, the public overwhelmingly decided that Clark Gable should play Rhett Butler. Gable, however, was under contract to MGM, a wholly owned subsidiary of Loew's. Loew's desired to invest in the Picture's production and was willing to loan Gable's services to Selznick for it. Therefore, on August 25, 1938, Loew's and SIP entered into an agreement whereby Loew's agreed to loan Gable, provide financing and distribute the movie, in exchange for SIP's agreement to share the revenues and pay a distribution fee ("the 1938 Agreement"). Selznick Decl. Ex. B.

In the summer of 1940, SIP was liquidated. Because the Picture represented SIP's largest asset, the rights to the completed picture were transferred to SIP's shareholders according to their percentage investment.

Among the shareholders of SIP to whom the rights were transferred were Selznick, who owned 50% of SIP; Myron Selznick, David's brother, who owned 6.774376%; and Cornelius Vanderbilt Whitney ("Whitney") who owned 11.196145%.

The 1938 Agreement was to expire by its own terms in December 1946. Before its expiration, Loew's purchased all outstanding ownership interests in the Picture except the two interests previously assigned by SIP to Myron Selznick and Whitney. As a result, when the distribution agreement expired in 1946, there were three co-owners of the Picture: Myron Selznick, who owned 6.774376% of the 75% previously owned by SIP; Whitney, who owned 11.196145% of SIP's interest; and Loew's, which owned the remainder.

After 1946, Loew's continued to distribute the Picture and to account to the other co-owners in the same way that it had while the 1938 Agreement was in effect. On March 23, 1944, Myron Selznick died, leaving his interest in the picture in trust for the benefit of his minor daughter, Joan Selznick Grill ("Grill").[2]

All rights and obligations of Loew's with respect to the Picture were thereafter transferred to and assumed by the MGM Entertainment Co. ("MGM"). In 1986, Turner Broadcasting System, Inc. ("TBS") purchased MGM and all MGM assets, including the entire film library. Turner thus assumed all rights, liabilities and obligations concerning the Picture previously held by Loew's.[3] For purposes of this litigation, Loew's, MGM and Turner are one and the same company.

From September 1, 1985, through the present, MGM, and then Turner, distributed the Picture worldwide, exploiting the Picture in cable television, syndicated broadcast television, and the home video tape market. Turner also intensified the merchandising

**2.** On March 27, 1989, Grill died. Control of her interest in the Picture passed to the administrator of her estate. On January 1, 1994, Grill's interest in the Picture was distributed from the estate to her heirs, plaintiffs L. Jeffrey Selznick, Daniel Selznick, Susan Archer, Melissa Oshier Larson, and also to Florence Selznick Howard. Thereafter, plaintiff Susan Archer assigned a percentage of her interest to plaintiff Larry Larson. The Plaintiffs, collectively, are now the owners of the interest previously held by Myron Selznick and thereafter by Grill.

**3.** At the hearing on these motions, the issue arose whether the citizenship of Turner had been changed by its acquisition by Time Warner. The Court requested briefing of the issue, which was received July 14, 1997. The Court has determined that its jurisdiction is proper.

tie-ups. Plaintiffs allege that the revenues generated by the distribution of the Picture during the period from September 1, 1985, through May 31, 1993, are in excess of $79 million.

Plaintiffs moved for Partial Summary Judgment as to their fifth cause of action on the ground that they have an independent nonexclusive right to exploit the Picture. Defendant cross-moved for Partial Summary Judgment on the grounds that (1) there is no evidence establishing plaintiffs' declaratory relief claim because, as a matter of law, Turner has the exclusive right to distribute the Picture; (2) plaintiffs' accounting claim relating to the 1984 Amendment to the Agreement between CBS and MGM is barred by an unambiguous agreement releasing Turner from all liability for that claim; (3) plaintiffs' accounting claim relating to the 1984 Amendment to the Agreement between CBS and MGM is barred by the applicable statute of limitations; (4) plaintiffs accounting claim relating to Turners distribution fee is barred by an unambiguous agreement that Turner is entitled to receive a 15%, rather than a 5%, distribution fee in connection with the distribution by MGM of the Picture on home video. At the hearing on the motions, the Court denied Turner's motion with respect to the second, third and fourth issues because there are genuine issues of material fact as to (1) whether the accounting claims relating to the 1984 amendment are barred by settlement agreement; (2) whether the accounting claims relating to the 1984 Amendment to the agreement are barred by the applicable statute of limitations; and (3) whether Turner is entitled to receive a 15%, rather than a 5%, distribution fee under the 1986 Agreement. The Court here addresses whether Turner, by operation of law or implied contract, enjoys the exclusive right to exploit the Picture.

## II. STANDARD GOVERNING MOTIONS

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the* Federal Rules: *Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Instead, ... the burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, a "party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing there is a genuine issue for trial." *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir.1988). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23. "The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson*, 477 U.S. at 252. Although all justifiable inferences are to be drawn in favor of the nonmoving party, the inferences are

limited to those upon which a reasonable trier of fact might return a verdict. *United States ex rel. Anderson v. Northern Telecom,* 52 F.3d 810, 815 (9th Cir.1995), *cert denied,* 516 U.S. 1043, 116 S.Ct. 700, 133 L.Ed.2d 657 (1996).

## III. ANALYSIS

### A. The 1938 Agreement

■ The 1938 Agreement provided that Loew's would be the exclusive distributor of the Picture in return for specified percentages of the gross proceeds and a reimbursement of certain costs advanced during the distribution process. Selznick Decl. Ex. B ¶ 3. It further provided that upon the expiration of its seven-year term, Loew's would return half of its interest in the Picture to SIP, such that Loew's would own 25% and SIP would own 75%. Selznick Decl. Ex. B ¶ 5(c). Also at termination, Loew's was required to transfer to SIP a 50% interest in the Picture's copyright. *Id.* ¶ 7. The management and control of the property was to be vested in SIP. *Id.* ¶ 5(c).

■ The 1938 Agreement made Turner a joint owner. As such, Turner enjoyed the right to exploit the Picture. Co-owners of a copyright each have the independent right to distribute the work on a nonexclusive basis, subject to the obligation to account. *See Oddo v. Ries,* 743 F.2d 630 (9th Cir.1984). The 1938 Agreement also gave Turner the right to charge a distribution fee and set forth the terms of that fee. On November 2, 1939, SIP and Loew's executed an amendment to the 1938 Agreement ("the 1939 Amendment") that reduced the regular distribution fee on domestic revenues. Selznick Decl. Ex. C. On July 5, 1940, a further amendment was made to the 1938 Agreement ("the 1940 Amendment") that reduced the distribution fee on foreign distribution and provided that Loew's would not enter

into television distribution agreements for the Picture without SIP's consent. Selznick Decl. Ex. D.

Pursuant to the 1938 Agreement, Selznick expressly relinquished his right, as a co-owner, to exploit the picture. Turner contends that it continues to have the exclusive right to distribute the picture based upon the 1938 Agreement. The Court rejects this contention for two reasons: (1) the 1938 Agreement expired by its own terms in 1946; and (2) there is no evidence that the 1938 Agreement was expressly extended or renewed.

### B. The Implied Contract Theory

■ Turner argues that, although the 1938 Agreement was to expire by its own terms in seven years, Plaintiffs' requests for accountings pursuant its terms give life to the Agreement. It is undisputed that both parties have continued to act under some of the provisions of the 1938 Agreement: Plaintiffs have required an accounting, and Turner has charged distribution fees. Turner contends that the Plaintiffs, by enforcing the 1938 Agreement, have given up all independent rights to exploit the Picture.

■ This argument is without merit.[4] First, it is undisputed that Turner, as a co-owner, has the right to exploit the Picture and that the Plaintiffs have a right to an accounting The parties' continued reliance on the terms of the 1938 Agreement to govern those rights may simply be a matter of convenience and does not demonstrate a mutual intent to enter into an implied contract. Second, even if the parties' conduct and written representations throughout the past five decades demonstrates that the parties were operating pursuant to an implied agreement, the agreement may be terminated upon reasonable notice. A contract without a term of

---

4. Turner also contends that the doctrines of waiver and estoppel support its theory that plaintiffs have no independent right to exploit the picture. Waiver is an intentional relinquishment of a right. *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe,* 30 Cal.App.4th 54, 60, 35 Cal. Rptr.2d 515 (1994). Here, there is no evidence that Plaintiffs intentionally gave up their right to exploit the film after the seven year contract. The doctrine of estoppel is similarly inapplicable.

Estoppel applies where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts. *Id.* at 59, 35 Cal. Rptr.2d 515. The record contains no evidence that Plaintiffs induced Turner to be the exclusive distributor of the Picture after expiration of the contract, or that Turner was disadvantaged by doing so.

duration is terminable upon reasonable notice. *See Aronowicz v. Nalley's, Inc.,* 30 Cal.App.3d 27, 51, 106 Cal.Rptr. 424 (1972). In *Aronowicz,* the California Court of Appeal explained:

> While the initial effort of the court, in construing contracts of continuing performance or forbearance which contain no express term of duration, must always be that of implying a term of duration commensurate with the intentions of the parties, in some cases the nature of the contract and the totality of surrounding circumstances give no suggestion as to any ascertainable term. In such cases the law usually (fn. 12 omitted) implies that the term of duration shall be at least a reasonable time, and that the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable time has elapsed.

*Id.,* citing 17A C.J.S. Contracts § 385(1), 398, pp. 457, 480; Am.Jur.2d, Contracts, § 486, pp. 955–957; 1 Williston on Contracts, *supra,* § 38, pp. 112–117; *see also Varni Bros. Corporation v. Wine World, Inc.,* 35 Cal.App.4th 880, 891, 41 Cal.Rptr.2d 740 (1995) (where distribution contract contains no ascertainable term as to duration, "the term of duration shall be at least a reasonable time and the contract shall be terminable at will upon reasonable notice").

■ Turner insists that under California law an agreement without an express duration is terminable at will *only* "where ... the nature of the contract and surrounding circumstances do not afford a reasonable basis for implying a term." *Lura v. Multaplex,* 129 Cal.App.3d 410, 413, 179 Cal.Rptr. 847 (1982). Turner argues that, here, since there is no term of duration contained in the implied contract, Turners exclusive rights to distribute the Picture continue through the duration of the copyright. Relying on *Manners v. Morosco,* 252 U.S. 317, 40 S.Ct. 335, 64 L.Ed. 590 (1920), Turner next urges that

"[a]s a matter of law, when an agreement for the distribution, assignment or licensing of a copyright does not prescribe the term of its duration, the agreement will be construed to be effective for the duration of the copyright term, **where no contrary intent is evident.**" Turner's Opp. to Plaintiffs' Motion at 20 (emphasis added). The 1938 Agreement, however, clearly demonstrates a contrary intent. It does not permit the grant of exclusive distribution rights to endure a single copyright term, let alone the renewal term. The 1938 Agreement limits Loew's distribution rights to a period of seven years, at the end of which all rights to control the Picture revert to SIP. The only reasonable interpretation of the implied contract is that it is renewable every seven years (which may introduce problems with the statute of frauds) or, even more rationally, that it may be terminated upon reasonable notice. If an implied agreement were to be found, plaintiffs would be entitled to cancel it upon reasonable notice. Plaintiffs contend that the filing of this lawsuit was reasonable notice to Turner of the cancellation of any implied agreement that might be extant. The Court agrees. The terms of the 1938 Agreement are not in effect.

**C. The Effect of the Renewal of the Copyright**

■ The initial term of copyright expired in December 1967.[5] There is no question that during the initial term of copyright the parties' predecessors in interest were co-owners of copyright. As such, they could not be liable to each other for infringement of the copyright. The rationale for this rule has been clearly explained by the Ninth Circuit:

> Because a co-owner is an owner, he has a right to use or license the use of the copyright, and cannot be an infringer: his duty to account to other co-owners for profits arises from equitable doctrines re-

5. The 1909 Copyright Act (the "1909 Act") governs this case. Under the 1909 Act, an author was entitled to an initial copyright term of 28 years, with the option to renew the copyright for an additional 28-year term. Copyright Act of 1909, 35 Stat. 1075, § 23. The renewal application had to be filed before the expiration of the initial term. If the author predeceased the last

year of the first 28-year term, certain statutory successors were entitled to renewal. 17 U.S.C. § 24 (1909 Act). In 1976, the Act was amended. The renewal period was extended by 19 years for a total of 47 years. 17 U.S.C. § 304(a). Thus the 1976 Act extended the copyright in the Picture to the year 2014.

lating unjust enrichment and general principles of co-ownership, and does not amount to an infringement claim. An infringement claim can be brought only against one who violates "the exclusive rights of the copyright owner," see 17 U.S.C. § 501(a), (b), and an owner does not have rights exclusive of a co-owner's, so an infringement claim cannot lie against a co-owner.

*Zuill v. Shanahan,* 80 F.3d 1366, 1369 (9th Cir.1996) (citation omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 763, 136 L.Ed.2d 710 (1997). *See also Richmond v. Weiner,* 353 F.2d 41, 46 (9th Cir.1965), *cert. denied,* 384 U.S. 928, 86 S.Ct. 1447, 16 L.Ed.2d 531 (1966); *Oddo v. Ries,* 743 F.2d 630, 633 (9th Cir.1984).

 In January 1967, however, MGM filed a renewal application for the Picture, identifying itself as the sole claimant. Davidson Decl. Ex. C. Although Turner urges otherwise, MGM's renewal filing did not eradicate plaintiffs' interests in the Picture. To the contrary: It is well-established that the co-owner claiming the renewal takes legal title to the renewal copyright as constructive trustee on behalf of the non-renewing co-owner. *Pye v. Mitchell,* 574 F.2d 476, 480 (9th Cir.1978) ("where the defendant and plaintiff [were joint authors of a work] for which defendant had obtained the related copyrights in her name only, this circuit found that the defendant held the copyright in trust for the co-author-plaintiff"), citing *Richmond v. Weiner,* 353 F.2d 41 (9th Cir. 1965), *cert. denied,* 384 U.S. 928, 86 S.Ct. 1447, 16 L.Ed.2d 531 (1966). A more recent Ninth Circuit decision implicitly recognizes this principle. *Marascalco v. Fantasy, Inc.,* 953 F.2d 469 (9th Cir.1991), *cert. denied,* 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 592 (1992). As Professor Nimmer explains, in *Marascalco,* "[r]enewal by one joint author

sufficed to protect the interests even of the nonrenewing heirs of the deceased other joint author."[6] 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (*"Nimmer"*) § 9.05[E], at 9–79 n.103. *See also Nimmer* at 9–90–91; 1 Paul Goldstein, *Copyright* § 4.9.4.1, at 4:186 (2d ed.1996) ("the registering co-owner holds legal title to the renewal term as a constructive trustee for the benefit of the nonregistering co-owners").

 Plaintiffs urge the Court to hold that the nonregistering co-owners' rights are substantively identical to those of the registered co-owner, and include the rights to assign or otherwise transfer their interests, exploit the work themselves and license it as well. Under Ninth Circuit authority, however, the interest held by the non-renewing co-owner is plainly an equitable—not a legal—one. *Pye,* 574 F.2d at 480; *Richmond,* 353 F.2d at 46. Although the cases cited by plaintiffs from the Southern District of New York, and others cited by Professor Nimmer in his treatise, *Nimmer* at 9–91, have held that the equitable interest of the nonrenewing co-owner is coextensive with the legal interest of the renewing co-owner, the Ninth Circuit has not so held.[7] Given the lack of direct authority on this point, this Court must analyze the nature of plaintiffs' beneficial interest by resorting to state law principles governing the nature of the constructive trust relationship the Ninth Circuit has found to arise in these circumstances. *See Oddo, supra; Meredith v. Smith,* 145 F.2d 620 (9th Cir.1944).

 This Court concludes that well-established principles of trust law dictate that the beneficial owner may not transfer legal title to any or all of the exclusive rights of copyright ownership. Traditional trust principles provide that the trustee has the exclu-

---

**6.** Because the co-author did not survive until the start of the renewal term, and thus the renewal interest failed to vest in the author's assignees, the Ninth Circuit was not required to explicitly address in Marascalo the full nature and scope of the renewal interest in the nonregistering co-author.

**7.** Indeed, in *Pye v. Mitchell,* 574 F.2d at 480, the Ninth Circuit declined to express an opinion on essentially this issue:

While we express no opinion on the right of an equitable owner of a copyright to bring an action for infringement in his own name and without joinder of the legal owner, we do hold that the equitable owner, Hammer, when joined with Pye, a legal owner, as plaintiffs may maintain an infringement action against a non-owner infringer for injuries prior to the time she, Hammer, became a legal proprietor.

sive right to sell or lease the trust *res*, subject to the care and loyalty of the fiduciary and a duty of accounting to the beneficiaries. *See Craven v. Dominguez Estate Co.*, 72 Cal.App. 713, 718, 237 P. 821 (1925) ("absolute title to the trust property is vested in the trustee"); Restatement (Second) of Trusts § 175 cmt. a (1957) ("[t]he beneficiary is not entitled to possession or control of the subject matter of the trust except as provided by the terms of the trust"). As Professor Nimmer explains, neither "conceptual nor policy considerations" would justify a contrary result:

> Only those members of the class whose names appear on a claim for renewal as filed with the Copyright Office become the legal owners of the copyright, which they hold as trustees for all members of the class entitled to renewal....
>
> Although it is true that each joint owner of *legal title* in a copyright may grant a nonexclusive license in a jointly owned work, and can transfer his own interest it is contrary to established principles of trust law to conclude that one who is merely a beneficial rather than legal joint owner may convey legal rights in the work. It is generally held that a trustee can lease trust property, or if necessary or appropriate to enable the trustee to carry out the purposes of the trust, the trustee can sell trust property. In the case of copyrighted works where the property can be exploited only by exhibiting it in some manner to others, leasing or selling rights in or to a work is an appropriate and reasonably nec-

essary right of a copyright trustee. Such a right is, of course, subject to the care and loyalty of a fiduciary and subject to the duty of accounting. On the other hand it is clear that beneficiaries under a trust cannot sell or lease the trust *res*. Likewise, applying traditional trust law, it is clear that where one tenant in common holds as a trustee on behalf of himself and other tenants in common, the trustee can exercise a power of sale for the co-owners.

*Nimmer* at 9–91–92 (footnotes omitted).

The logic behind this is clear. Where there is only one claimant listed on the renewal application, a purchaser of exclusive rights from the claimant cannot, by looking at the renewal application, be assured that he has actually obtained the exclusive rights in the work if it is possible that someone other than the listed claimant has legal rights in the work. *See Nimmer* § 9.05[E] at 9–92 ("[u]nless a prospective purchaser could look to the Copyright Office records and learn therefrom the names of all persons who can convey legal rights in the work, the purchaser had no assurance that he was obtaining exclusive rights in the work").

 Therefore, this Court holds that because plaintiffs' names do not appear on the renewal certificate, they may not exercise the nonexclusive ownership rights of co-owners of legal title to the work.[8] Accordingly, the Court grants Turners motion for partial summary judgment, and denies Plaintiffs' motion for partial summary judgment on plaintiffs' fifth cause of action for declaratory relief.[9]

---

8. Because Turner has not filed a counterclaim against Plaintiffs for copyright infringement, the Court does not reach at this time the question whether the legal owner of copyright may sue the beneficial owner for its own use of the work. The Court notes that the position of Warner Bros. Records that the beneficial owner of copyright cannot be sued for infringement was rejected by the Northern District of California in *Fantasy, Inc. v. Fogerty*, 654 F.Supp. 1129, 1131 (N.D.Cal.1987). That case is factually distinguishable, however, and may be legally as well, because the court there defined "beneficial owner" to describe individuals who have voluntarily given up "exclusive 'use' rights in exchange for a sales percentage or royalties derived from the exploitation of the copyright," citing *Cortner v. Israel*, 732 F.2d 267 (2d Cir.1984), as opposed to co-owners whose legal rights were lost because another co-owner failed to register their names

at renewal time. Interestingly, *Cortner* held that while the beneficial owners of a copyrighted work held a sufficient interest to confer standing to sue, they could not hold the legal owner liable for infringement of their beneficial interest. *Id.* at 272. Although the Court expressly reserves judgment on this point, it may very well be that, applying the Ninth Circuit holding in *Richmond v. Weiner*, *supra*, and giving consideration to the equitable principles governing the parties' relationship, the beneficial owner, unlike third parties, cannot be held liable to the legal owner for infringement, and, thus, as a logical corollary, would hold a nontransferable right to exploit the work itself.

9. There is no evidence in this record to suggest that plaintiffs have attempted to correct the records of the Copyright Office in an appropriate proceeding. *See Nimmer* at 9–93.

## IV. CONCLUSION

The Court grants in part and denies in part both motions for partial summary judgment, finding: (1) that the 1938 Agreement expired on its own terms in December of 1946; (2) to the extent there was an implied contract based on the terms of the 1938 Agreement, the contract is terminable upon reasonable notice and was terminated; and (3) based on the 1967 renewal of the copyright in the Picture in the name of MGM alone, Plaintiffs, as beneficial owners, do not enjoy an independent nonexclusive right to exploit the Picture, and thus may not transfer or license the work to third parties.